UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARIO LUNA,
       Plaintiff,

vs.                                    **<u>COMPLAINT</u>**

CITY OF NIAGARA FALLS,
CITY OF NIAGARA FALLS POLICE CHIEF NICHOLAS LIGAMMARI,
CITY OF NIAGARA FALLS POLICE OFFICERS BAHA A. SHIHADAH, B. CLAPS and MATTHEW SZCZEPANIEC,
        Defendants.
_____

## <u>Jury Demand</u>

Trial by Jury on all issues is demanded.

## <u>Preliminary Introduction</u>

This is a civil rights action brought pursuant to 42 U.S.C § 1983 for the violation of Plaintiff's First, Fourth, and Fourteenth Amendment rights of the United States Constitution. The claim arises from a December 5, 2024, incident in which Niagara Falls Police Officers, acting under color of state law, intentionally and willfully subjected the Plaintiff to the unlawful seizure and deprivation of his property and liberty. The incident also involved the excessive use of force against Plaintiff after the Plaintiff voiced his displeasure with Defendant Officer Baha A. Shihadah 's unlawful and unreasonable shooting of Plaintiff's canine... aka Miles. Defendant Officer Baha A. Shihadah discharged his firearm in an unjustified manner, thereby shooting and severely injuring Plaintiff Mario Luna's family dog, Miles. Plaintiff was then unlawfully detained and held against his will and kept from pursuing proper medical care for his beloved family pet for around twenty minutes after the animal was shot, thereby nearly causing the demise of said animal. Such detainment was without probable cause and done in retaliation for Plaintiff exercising his First Amendment right in response to the shooting of

his dog. Ultimately, Plaintiff was charged with the violation level offense of disorderly conduct, and such charge was dismissed out of Niagara Falls City Court, as there was a lack of probable cause to both initiate and pursue that charge.

## **Parties**

1.      Plaintiff, Mario Luna, resides at all times here relevant in the City of Niagara Falls, Niagara County, and State of New York.

2.      Specifically, Plaintiff Mario Luna resided at 479 20th Street, Niagara Falls, New York 14303, as of December 5, 2024, the date giving rise to the causes of action as set forth in this complaint.

3.      Further, Plaintiff Mario Luna and his family dog, Miles, a then one-and-a half (1.5) year old male Belgian Malinois, were spending time together and listening to music at Plaintiff's above-referenced home on December 5, 2024, the date giving rise to the causes of action as set forth in this complaint.

4.      Upon information and belief, the City of Niagara Falls is a City located in the Western District of New York and is a self-insured entity.

5.      Upon information and belief, Defendant Officer Baha A. Shihadah, is employed by the Niagara Falls Police Department and was acting in such capacity during the events that give rise to this lawsuit.

6.      Upon information and belief, Defendant Officer B. Claps, is employed by the Niagara Falls Police Department and was acting in such capacity during the events that give rise to this lawsuit.

7.      Upon information and belief, Defendant Officer Matthew Szczepaniec, is employed by the Niagara Falls Police Department and was acting in such capacity during the events that give rise to this lawsuit.

8.      Upon information and belief, Defendant Police Chief Nicholas Ligammari, is employed by the Niagara Falls Police Department and was acting in such capacity during the events that give rise to this lawsuit.

## Jurisdiction

9.      Plaintiff brings this action to recover damages for the violations of his civil rights under the First and Fourth Amendment of the United States Constitution, codified at 42 U.S.C. § 1983 and as bestowed upon the states and its citizens through the Due Process Clause by the Fourteenth Amendment of the United States Constitution.

10.     The unreasonable shooting of a companion animal constitutes an unreasonable "seizure," of personal property under the Fourth Amendment. Carroll v. County of Monroe, 712 F.3d 649 (2nd Circuit, 2013).

11.     The Fourth Amendment protects individuals from a law enforcement officer's use of excessive force during an arrest. See Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006).

12.     The Fourth Amendment also protects citizens from both an unlawful arrest as well as from a malicious prosecution subsequent to such an arrest.

13.     The First Amendment protects one from government taking adverse action against them for engaging in protected free speech against one's government or its agents.

14.     Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1332 (federal question) and § 1343 (civil rights).

15.     Declaratory, injunctive, and equitable relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202.

16.     Compensatory and Punitive damages are sought pursuant to 42 U.S.C. § 1983, including but not limited to Plaintiff' lost wages, loss of consortium, and the loss of Plaintiff's liberty and freedom pursuant to the illegal and unlawful conduct of the Defendants.

17.     Costs and Attorney's fees may be awarded pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. Rule 54.

18.     As mandated by the Supremacy Clause, in relations to actions brought pursuant to 42 U.S.C. § 1983, Plaintiff does not have to comply with Municipal Law Section 50-e with regard to filing a Notice of Claim with regard to Federal Causes of Action. That being said, Plaintiff did serve a notice of claim on the relevant parties or about March 1, 2025. At least thirty days elapsed since the notice of claim was filed and before this complaint was filed; and in that time, the Defendants have neglected

or refused to satisfy the claim." <u>Coggins v. Cty. Of Nassau</u>, 988 F. Supp. 2d 231, 251 (EDNY 2013). An examination of Mr. Luna was done pursuant to New York General Municipal Law §50(H) on or about July 29, 2025.

19.     At all times here mentioned, Defendants were acting under the color of state law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

<b><u>Venue</u></b>

20.     This action properly lies in the Western District of New York, pursuant to 28 U.S.C. § 1343(3) because the claims arose in this judicial district and the Defendants reside in and /or do business in Niagara County.

<b><u>Factual Background</u></b>

21.     In mid-September of 2024, Plaintiff went with his friend Alexandra Fox to Ohio and purchased a one-year-old Belgian Malinois dog, aka Miles.

22.     Miles was originally supposed to be a police K-9, but was unable to perform certain required tasks needed to become a police dog.

23.     Plaintiff paid $8,000 for the dog. Plaintiff trained Miles every day, and Miles was very well socialized. In particular, Miles had a very close bond with Alexandra Fox.

24.     As such, she would come over nearly every morning to spend quality time with Miles.

25.     On December 5, 2024, Defendant Officer Baha A. Shihadah showed up at Plaintiff's residence, located at 479 20th Street, Niagara Falls, New York 14303, at or about 7:00 a.m., apparently in response to a loud noise complaint.

26.     Plaintiff did not initially hear Defendant Officer Shihadah's knock, but his animals alerted him to someone's presence outside. Plaintiff opened the door, expecting it to be Alexandra Fox. When Plaintiff opened the door, Miles proceeded outside to the fenced driveway area of the

4

property to relieve himself, as he does every morning. Before Miles had even reached the bottom of the stairs, Defendant Officer Shihadah opened fire on him, in front of and endangering the life of Plaintiff, who witnessed the act while only mere feet away from the Officer.

27. At least four shots were discharged by Defendant Officer Shihadah. He discharged his firearm with no provocation, no warning, and no effort to use any less lethal means. Miles was on his own property and not exhibiting any threatening behavior or any behavior that can reasonably be interpreted as threatening. He was struck by at least one of the bullets, causing him significant and serious physical injury.

28. Plaintiff observed the dog from his vantage point at the top of the stairs. Miles's physical condition was such that his chest was bleeding profusely, peeled open by a bullet wound. Miles retreated, injured and bleeding, immediately back into the home.

29. Defendant Shihadah contends that he shot Miles because the dog was charging him.

30. However, such testimony is belied by the fact that Miles was professionally trained and specifically prepared to remain calm, obedient, and well-mannered in all types of public settings. Although he never went into active service, his training exposed him to a wide variety of situations involving both people and animals to ensure that he was confident and comfortable around others. Those who knew Miles – his trainers, neighbors, and friends – consistently described him as gentle, intelligent, and exceptionally well-behaved. He interacted regularly with adults, children, and other animals, always responding with patience and friendliness. Miles had never shown any signs of aggression toward anyone or anything. Even while in severe pain and receiving treatment for his injuries, Miles maintained his calm and trusting disposition, which is an enduring testament to his good nature and training. Moreover, video evidence in the form of Defendant Shihadah's body cam footage of the incident, attached as ***Exhibit A*** to this motion, depicts Miles demonstrating sheerly non-threatening behavior in his interaction with said Officer. To wit: his ears were not pinned back, he was not bearing his teeth, his tail was wagging, and he was not growling or barking.

31. Immediately following the shooting, Plaintiff Mario Luna urgently pleaded with Defendant Officer Shihadah to permit him to obtain veterinary care for his dog, who was bleeding profusely from the chest. Plaintiff did not have a car or a valid New York State Driver's license and was thus requesting that Defendant Shihadah take both he and Miles to the veterinarian for

emergency treatment. Defendant Shihadah informed Plaintiff that he was not permitted to leave the scene and must wait for a supervisor to arrive before seeking medical attention for Miles, thereby unlawfully detaining Plaintiff and preventing him from rendering aid to his injured animal. Defendants B. CLAPS and MATTHEW SZCZEPANIEC then responded to the scene.

32. As Plaintiff does not drive, he continued requesting that the Officers help transport Miles to a veterinarian. They also refused to do so. Failure to provide an animal medical care under these emergent circumstances is a crime under New York's Agricultural and Market Law (AML) §353. (People v. O'Rourke, 83 Misc. 2d 175, 369 NYS2d 335 (Crim.Ct. NY Co. 1975). Plaintiff's friend, Alexandra Fox also then arrived at the residence.

33. At Plaintiff's request, Ms. Fox agreed to transport Miles to an emergency veterinary facility. Ms. Fox asked the Defendant Officers to move their vehicles, which were blocking the street in front of Plaintiff's residence, in order to access the driveway and load Miles into her car. The Officers initially refused, further delaying Miles's transport as they spoke amongst themselves without urgency. After some time, Ms. Fox was finally permitted access to the driveway.

34. After Ms. Fox and Plaintiff managed to place Miles into Ms. Fox's vehicle and prepared to depart for the emergency veterinary hospital, the Defendant Officers informed Plaintiff that he could not leave because they needed to speak with him. All told, the Defendant Officers delayed Plaintiff from getting Miles his needed medical care for upwards of 20 minutes, all while the poor animal was in immense pain and bleeding from his gunshot wound.

35. Plaintiff then exited the vehicle so that Miles could get his life saving treatment. At that time, the above-named Defendant Officers forcibly detained Plaintiff, using excessive force by throwing him to the ground, pressing their knees into his neck and back, and handcuffing him, despite his total lack of resistance and absence of any criminal conduct. Such actions caused Plaintiff soreness, muscle aches and pain.

36. The Plaintiff was then taken to the Niagara Falls Police Department, where he was charged with the violation level offense of disorderly conduct. He was immediately released, yet provided no transportation to the veterinarian's office or back to his residence despite his companion animal being in critical condition. The Plaintiff was charged for having an unlicensed dog, which the Plaintiff pled guilty to, as well as for the charge of disorderly conduct, which was later dismissed.

37.     Ultimately, Ms. Fox transported Miles to Green Acres Veterinary Center in Tonawanda, New York. Upon arrival, approximately 45 minutes after Miles had been shot and was continuously bleeding, veterinary staff performed an assessment and determined that Miles had sustained a gunshot wound to the chest, which had exited near the ribcage, causing significant trauma.

38.     Finally, and miraculously, Miles was provided life-saving surgery by Dr. Harack. Said doctor located and controlled the source of bleeding. Following surgery, veterinary staff continued monitoring and providing treatment for several days to stabilize Miles, resulting in over $9,000 in veterinary bills.

39.     Plaintiff Mario Luna's efforts to obtain immediate medical care for Miles were delayed by Defendants' actions, including the detention of Plaintiff, causing Miles to suffer continued trauma and requiring extensive veterinary intervention.

40.     As stated, in New York it is a crime to deprive animals of necessary medical care.

41.     Unjustifiable pain and suffering inflicted against an animal is in violation of Agricultural and Markets Law §353 and §353-b. All those responsible for having delayed Miles' veterinary care furthered an act of cruelty towards an animal, also in violation of Agricultural and Markets Law §353.

42.     Miles was on his own property at the time of the Defendants' unlawful intrusion and presented no threat of any kind. Defendant Officer Shihadah acted unreasonably, as judged objectively by the perspective of a reasonable police officer and not by the subjective intent of said Officer.

43.     Plaintiff's interest in being free from such unreasonable seizures and from unreasonable interference with the companionship he had with his dog Miles outweighs any interests Defendants may claim to justify their interference with Plaintiff's property rights in the ownership of said dog.

44.     Defendant Shihadah, upon information and belief, has discharged his firearm and shot other innocent animals that were of no threat to him as well.

45.     Other Niagara Falls Police Officers have done the same.

46.     Thus, the unnecessary shooting of dogs is an official policy or custom that caused the plaintiff to be subjected to a denial of his constitutional right to be free from an unlawful seizure in the form of the unlawful and unreasonable shooting of his dog." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).

47.     Such pattern or practice of Niagara Falls Police Officer's shooting innocent animals who were non-threatening in nature is on account of the City of Niagara Falls and its policy maker and police chief NICHOLAS LIGAMMARI, eschewing the need for training its' Officer how to interact with dogs while in the field. Currently, they provide no training to their Officers on how to interact with dogs while out in the field.

48.     Common sense dictates that Ligammari and the City know "to a moral certainty that city police will confront dogs frequently when out in the field. Further, that situation can present the Officer with "a difficult choice of the sort that training or supervision will make less difficult and/ or. . . there is a history of employees mishandling the situation." Lastly, the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights, and of course, it did so here.

49.     Thus, Plaintiff has a meritorious claim against the City of Niagara Falls and its' policymaker in Nicholas Ligammari. *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992).

50.     Said dehumanization of Plaintiff and the violation and deprivation of Plaintiff's civil rights as afforded him under both the New York State Constitution and the United States Constitution has caused Plaintiff to suffer severe emotional distress which has caused him to seek psychiatric treatment and counseling. Specifically, Plaintiff suffered depression, anxiety, and potentially post-traumatic stress disorder. The incident herein described and the resultant injuries and damages sustained were caused as a result of the negligence, carelessness, reckless disregard and/or unlawful conduct on the part of the agents, servants and/or employees of the Defendants.

**First Cause of Action for violations of the Fourth and Fourteenth Amendment as per 42 U.S.C. § 1983 against for an unlawful seizure in the form of the unlawful damaging of Plaintiff's property and deprivation of his right to be free from such a seizure against Defendant Officer**

**Baha A. Shihadah, Defendant Officer B. Claps, and Defendant Officer Matthew Szczepaniec in their individual capacities.**

51.     Plaintiff, Mario Luna, repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

52.     On or about December 5, 2024, Defendant Officer Shihadah arrived at Plaintiff's residence and entered Plaintiff's fenced yard without Plaintiff's permission or a lawfully executed warrant and approached the side door of the home. Defendant Shihadah also disregarded a beware of dog sign that Plaintiff had up. Plaintiff did not initially hear Defendant Officer Shihadah's knock, but his animals alerted him to someone's presence outside.

53.     When Plaintiff opened the door, his dog, Miles, stepped out and moved toward Defendant Officer Shihadah in a calm and friendly manner, as was his custom when greeting visitors or strangers. Without justification nor warning, Defendant Officer Shihadah discharged his firearm, firing four rounds in a residential neighborhood, with one bullet striking Miles in the chest. At the time of the shooting, Miles was non-barking, non-threatening, and visibly amicable, wagging his tail as he approached in a peaceful and non-confrontational manner. After being hit by a bullet from Defendant Shihadah's gun, the dog still did not show aggression and retreated back into the residence, now severely injured.

54.     Some particulars of said evidence is that:

- The dog, at the time of shooting and at no other time before or after the being shot, showed any aggression toward Defendant Officer Shihadah or any other Officers on the scene.

- Miles, at the time of shooting, was mere feet away from Plaintiff Mario Luna, and the discharge of a gun so close to the Plaintiff certainly endangered his welfare.

- Defendant Officer Shihadah, by his own admission, made Plaintiff Mario Luna wait until a supervisor arrived by holding him against his will, despite having no legal authority to do so, and despite Plaintiff's requests to get his beloved animal the immediate veterinary care he so much needed.

- In New York, it is a crime to deprive animals of necessary medical care
- Plaintiff committed no crime, and there was no probable cause to imprison or seize his person.

55.     The above-referenced conduct demonstrates that the Defendants conspired to and did deprive the Plaintiff of his liberty as would shock the conscience, in violation of his rights as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

56.     Miles, as Plaintiff's best friend and companion, constitutes a special classification of property under New York State Law. Defendants seized and gravely injured said companion animal in a matter that shocks the conscience, and in a criminal and unjustified matter.  Travis v. Murray, 42 Misc.3d 447 (2013). Miles continues to suffer both physical and emotional wounds from such acts to this day, as does Plaintiff Mario Luna.

57.     It is undisputed that, in the Second Circuit, the unreasonable shooting of a companion animal constitutes an unreasonable "seizure," of personal property under the Fourth Amendment. Carroll v. County of Monroe, 712 F.3d 649 (2013).

58.     Said above-referenced actions, both individually and in their entirety, fully disregarded the Constitutional rights of the Plaintiff to be free of unlawful and unreasonable seizures of one's property under the Fourth and Fourteenth Amendments of the Constitution.

**Second Cause of Action for violations of the Fourth and Fourteenth Amendment as per 42 U.S.C. § 1983 for unreasonable seizure, false arrest, and false imprisonment against Defendant Officer Baha A. Shihadah, Defendant Officer B. Claps, and Defendant Officer Matthew Szczepaniec, in their individual capacities**

59.     Plaintiff Mario Luna repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

60.     Plaintiff asserts that he was unlawfully held and imprisoned by the Defendant Officers on December 5, 2024, without probable cause that a crime had been committed.

61.     The Fourth Amendment prohibits the police from carrying out unreasonable seizures. An arrest is a "seizure" under the Fourth Amendment.  Under the Fourth Amendment, an arrest may

only be made when a police officer has probable cause to believe that the person arrested has engaged in criminal conduct.  An arrest without probable cause is an unreasonable seizure.

62.    In New York, any § 1983–based false arrest claims are "distinguished from their state law analogues only by the requirement that the tortfeasor act 'under color of state law.' " Hickey v. City of New York, No. 01 Civ. 6506, 2004 WL 2724079, at *6 (S.D.N.Y. Nov.29, 2004) (citing Post v. Doherty, 944 F.2d 91, 94 (2d Cir.1991)). Therefore, this Court must look to the New York State law of false arrest, recognizing that in New York, claims of false arrest are synonymous with those of false imprisonment. Williams v. City of Mount Vernon, 428 F. Supp. 2d 146, 157 (S.D.N.Y. 2006).

63.    To maintain a claim for unlawful arrest, a plaintiff must establish: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. See, Bernard v. United States, 25 F. 3d 98, 102 (2d Cir. 1994).

64.    An individual can be said to have been seized by the police only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Id. (citations and interior quotation marks omitted); see Brown v. Sweeney, 526 F. Supp.2d 126, 132 (D. Mass. 2007).

65.    Factors which might suggest a seizure therefore include: the threatening presence of several officers; the display of a weapon; physical touching of the person by the officer; language or tone indicating that compliance with the officer was compulsory.

66.    Defendant Shihadah had already discharged his firearm, shooting Plaintiff's dog, Miles. This use of lethal force clearly conveyed to Plaintiff that compliance was compulsory.

67.    In the present action, Defendants were acting under the color of state law, as all Defendants were on duty as Niagara Falls Police Officers during these events, thereby sworn to uphold and enforce the laws of New York State.

68.    Defendants intended to detain and confine Plaintiff and did in fact arrest him without legal basis or probable cause.

69.    Plaintiff was unquestionably conscious of the confinement, as he pleaded with the Defendant Officers to allow him to leave to save the life of his dog. Additionally, Plaintiff's liberty

was stripped; he was not free to leave, as he had no vehicle of his own and his only available means of transportation was with Ms. Fox, whom Defendant Officers refused to allow him to accompany. Furthermore, Plaintiff directly asked why he was being arrested. Defendants informed Plaintiff that he was being arrested for Disorderly Conduct, further establishing that he did not consent to the confinement.

70.    The final element of the claim is that the confinement was not otherwise privileged. There was no warrant for Plaintiff's arrest, and nor was he in the process of committing any suspected criminal activity.

71.    Defendants had no reason to believe that Plaintiff was committing or had committed any criminal offense. The arrest of Plaintiff was designed to intimidate and harass and was not a legitimate use of governmental power.

72.    Specifically, Police Officer Baha Shihadah and Officer Claps state that of their own personal knowledge, Mr. Luna was "blasting music all night long and yelling in the early hours on December 5th, 2024," and such was the basis for the arrest of Plaintiff. A copy of the criminal complaint in question is attached hereto as **Exhibit B** to this complaint.

73.    Unless Ofc. Shihadah was sleeping over at Mr. Luna's house, he would have no idea what songs were playing there all night long or what Mr. Luna was yelling in the early morning hours.  There is no indication that Ofc. Shihadah was in fact present at Mr. Luna's house during that time frame. The Officer does not set forth his basis of knowledge in any way, shape, or form. With that in mind, he has not set forth anything of an evidentiary nature to support his allegations and therefore, there is no reasonable cause to believe in the accusatory instrument that Mr. Luna committed the offense of disorderly conduct. Moreover, as this violation offense was not committed in the presence of Ofc. Shihadah, the arrest itself was unlawful under CPL §140.10. Thus, the charge was in fact dismissed as a matter of law.

74.    Such conduct, in conjunction with all facts alleged herein this complaint, constitutes that all named Defendants caused, in whole or in part, Plaintiff to be unreasonably seized and falsely imprisoned as defined by law.

75. Such deprivations of Plaintiff's property rights and right to liberty and happiness were in violation of the rights secured to Plaintiff by the Fourth Amendment of the United States Constitution and by Title 42 U.S.C. § 1983.

76. As a result of the above-referenced Defendant's deprivation of Plaintiff' civil and Constitutional rights, Plaintiff has been emotionally distraught, sustained severe mental anguish, humiliation, and severe emotional distress as a result thereof, all in an amount to be determined at trial.

77. Plaintiff demands costs and attorney fees pursuant to 42 U.S.C. § 1988.

**Third Cause of Action for the State Claim of False Arrest and False Imprisonment Against Defendant Officer Baha A. Shihadah, Defendant Officer B. Claps, and Defendant Officer Matthew Szczepaniec, in their individual capacities**

78. Plaintiff, Mario Luna, repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

79. The elements for a state claim for illegal arrest and imprisonment are identical to those of a federal claim in the second circuit.

80. Further and in this instance, (1) a notice of claim was served on or about February 22, 2025; (2) at least thirty days elapsed since the notice of claim was filed and before this complaint will be filed; and (3) in that time, the Defendants neglected or refused to satisfy the claim." Coggins v. Cty. Of Nassau, 988 F. Supp. 2d 231, 251 (EDNY 2013).

81. Thus, said Defendants are liable for the state claim of falsely arresting the Plaintiff.

**Fourth Cause of Action for Violation of the Fourth Amendment as per 42 U.S.C. §1983 for the excessive use of force used against the Plaintiff by Defendant Officer Baha A. Shihadah, Defendant Officer B. Claps, and Defendant Officer Matthew Szczepaniec in their individual capacities**

82. Plaintiff Mario Luna repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

83.     To establish a claim for excessive force, a plaintiff must show "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." Cass v. City of Abilene, 814 F.3d 721, 731 (5th Cir. 2016). Whether the force used was excessive or unreasonable is a fact intensive inquiry that depends on the "totality of the circumstance." Tennessee v. Garner, 471 U.S. 1, 8-9 (2010).

84.     In the case at bar, Plaintiff sustained multiple injuries, including abrasions and bruising to his knees and elbows resulting from being forcefully shoved to the ground by all of the above-named Defendant Officers. Plaintiff also suffered pain and injury to his neck and back when the Defendant Officers pressed their knees into these areas while Plaintiff was on the ground. Plaintiff was subjected to this force without any legitimate basis, as he was fully compliant and not engaged in any unlawful conduct at the time of the incident.

85.     In the present case, all force which was used was clearly in excess to the need at hand, given that there was no need nor cause to seize Plaintiff, yet alone use force upon him.

86.     Therefore, the force used was objectively unreasonable.

87.     This excessive use of force by the above Defendants constitutes a violation of the Fourth Amendment as an unreasonable seizure.

88.     Plaintiff demands costs and attorney's fees pursuant to 42 U.S.C. §1988.

### Fifth Cause of Action for the Common Law Tort of Battery against Defendant Officer Baha A. Shihadah, Defendant Officer B. Claps, and Defendant Officer Matthew Szczepaniec in their individual and official capacities

89. Plaintiff repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

90. The elements of a cause of action [to recover damages] for battery are bodily contact, made with intent, and offensive in nature." Tillman v Nordon, 4 AD.3d 467, 468 (2004).

91. On December 5, 2024, Plaintiff was forcibly thrown to the ground by Defendant Officers Shihadah, Claps, and Szczepaniec. While Plaintiff was on the ground, one or more of the officers pressed their knees into his neck and back and handcuffed him, despite Plaintiff offering no resistance

14

and engaging in no unlawful conduct. As a direct and proximate result of Defendants' actions, Plaintiff sustained physical injuries, including bruising and abrasions to his knees and elbows, as well as pain in his neck and back.

92. In this instance, Plaintiff can easily establish the three elements of a battery. He was unjustifiably grabbed and thrown to the ground by the above-named Defendants, as well as and pinned by one of the Defendant Officers knees, constituting a form of bodily contact. The contact was offensive, as Plaintiff in no way consented to the contact.

93. The Defendants in this case clearly intended to make contact with the Plaintiff as he was taken to the ground and then handcuffed by said Defendants. Plaintiff would be detained by the co-Defendants, who then transported him to a police station to continue to detain the Plaintiff. This conduct can in no way be considered accidental.

94. Defendant City of Niagara Falls is liable for this tort under a theory of respondeat superior, as the intentional tort took place within the scope of Defendants Officers Shihadah, Claps, and Szczepaniec's employment.

**Sixth Cause of Action for the Common Law Tort of Assault Against Defendant Officer Baha A. Shihadah, Defendant Officer B. Claps, and Defendant Officer Matthew Szczepaniec individual and official capacities**

95.     Plaintiff repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

96.     "To sustain a cause of action to recover damages for assault, there must be proof of physical conduct placing the plaintiff in imminent apprehension of harmful contact" Cotter v Summit Sec. Servs., Inc., 14 AD.3d 475 (2005).

97.     In the present matter, Defendant Officers Shihadah, Claps, and Szczepaniec subjected Plaintiff Mario Luna to an assault when they forcibly threw him to the ground, pressed their knees into his neck and back, and handcuffed him without probable cause. This action was intentionally done in retaliation for Plaintiff exercising his First Amendment rights and voicing his objection to the unlawful shooting of his family dog, Miles. Such conduct constitutes an assault that served no

legitimate purpose and was carried out maliciously, causing Plaintiff physical injuries, emotional distress, and the deprivation of his liberty and property.

98.    Plaintiff was in imminent apprehension of such force being used against him.

99.    Defendant City of Niagara Falls is liable for this tort under a theory of respondeat superior, as the tort took place within the scope of Defendants Officers Shihadah, Claps, and Szczepaniec's employment.

**Seventh Cause of Action for violations of the Fourth, Sixth, and Fourteenth Amendments of the US. Constitution as per 42 U.S.C. § 1983 for Plaintiff's right to be free from malicious prosecution against Defendant Officer Baha A. Shihadah and Officer B. Claps in their individual capacities**

100.    Plaintiff Mario Luna repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

101.    To prevail on a § 1983 claim for malicious prosecution, a Plaintiff must plead (1) the initiation or continuation of a criminal proceeding; (2) termination of the proceeding in his favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the Defendants' actions." Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997).

102.    To maintain a claim that Disorderly Conduct was committed under the relevant subsection, an individual must, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: in a public place: Creates a hazardous or physically offensive condition by any act which serves no legitimate purpose. As set forth previously, Plaintiff did not do anything that would constitute a violation of the relevant statute.

103.    Thus, the Defendant instituted this charge against Plaintiff without the requisite probable cause.

104.    As the lack of probable cause to initiate these proceedings has been sufficiently pled, there is no need to independently plead malice. Malice can be inferred from the lack of probable cause. Cruz v. City of New York, No. 08 Civ. 8640 (LAP), 2010 WL 3020602, at (S.D.N.Y. July 27,

2010); <u>Bleiwas v. City of New York</u>, No. 15 CIV. 10046 (ER), 2017 WL 3524679, at (S.D.N.Y. Aug. 15, 2017).

105.    Plaintiff had to appear in Court on several occasions regarding the unlawful charge of Disorderly Conduct before it was dismissed. Thus, Plaintiff suffered a sufficient post-arrest deprivation of liberty to trigger a different form of seizure than that of the arrest itself and thus, a malicious prosecution claim is warranted. <u>Swartz v. Insogna</u>, 704 F.3d 105 (2nd Circuit Court of Appeals, 2013).

**Eighth Cause of Action for violation of the First Amendment of the US. Constitution per 42 U.S.C. § 1983 for Plaintiff's right to be free from retaliation against exercising and engaging in free and protected speech against the City of Niagara Falls Police Officers Baha A. Shihadah, and B. Claps in their official and individual Capacities.**

106.    Plaintiff repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

107.    As set forth above in detail, Plaintiff was engaging in speech or conduct that was protected. It is well recognized in this Circuit that Speech directed at police officers will be protected unless it is likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance or unrest." <u>Kerman v. City of New York</u>, 261 F.3d 229, (2d Cir. 2001).

108.    With that in mind, the Defendant took adverse action against the plaintiff by arresting him and charging him with the violation level offense of disorderly conduct.

109.    There was a causal connection between the protected speech and the adverse action, in that the Defendants would not have arrested Plaintiff but for the fact that he was highly critical of Defendant Shihadah's act of shooting his dog.

110.    Such charge was as insufficient as it was retaliatory, and therefore was ultimately dismissed.

**Ninth Cause of Action for Plaintiff Mario Luna for violations of the Fourth and Fourteenth Amendment as per 42 U.S.C § 1983 for municipal liability under the deprivation of one's**

**property rights in the form of the shooting of citizens' dogs is a municipal pattern or practice against the against the City of Niagara Falls and Police Chief Nicholas Ligammari in their official capacities.**

111.    Plaintiff Mario Luna repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

112.    Aside from the above-referenced set of facts, the City of Niagara Falls and its Police Department caused the Plaintiff to be subjected to Fourth Amendment violations because the Defendant Officers Shihadah, Claps, and Szczepaniec's violations were part of the customary practices of the City of Niagara Falls and it's police department. Such repeated Fourth & Fourteenth Amendment violations amount to the City of Niagara Falls's deliberate indifference to an obvious need for training of its officers both in the laws pertaining to unlawful seizures, in the art of de-escalation, and in how to avoid conflict and especially lethal conflict when dealing with canines. This failure of the Department to adequately train, supervise, and regulate their Officers' dealings with canines resulted in Defendant Shihadah's actions in maiming Miles and thereby causing Plaintiff insufferable and egregious harm, and will result in more unnecessary bloodshed if corrective measures aren't taken by the City of Niagara Falls, the City of Niagara Falls Police Department, and City of Niagara Falls Police Department Chief Nicholas Ligammari.

113.    Said Officers receive no training in their interactions with canines. As nearly half of all households own dogs in this country, it is of course readily apparent that the City of Niagara Falls Police Officers will have frequent interactions with dogs.

114.    Training is readily available to teach law enforcement officers the basics of canine behavior and body language, threat assessments of encounters involving dogs, alternatives to lethal force, making the decision to use lethal force, and how to deal with the aftereffects of that decision, with an end-goal of being able to instruct other law enforcement officers on those key concepts. Such training is endorsed, sponsored and practiced by such entities as the United States Department of Justice, the National Association of Sheriffs, The International Association of Chiefs of Police, and the Los Angeles Police Department. Despite, such training being readily available and extremely affordable and/or free of charge, the City of Niagara Falls and its police department led by Chief

Nicholas Ligammari forego such training. Such inaction constitutes deliberate indifference to the rights of citizens to be free of the unlawful shootings of their dogs by police officers.

115.    Furthermore, the City of Niagara Falls, its Police Department, and Chief Nicholas Ligammari tacitly condone the practice of lethal means used as a first resort against dogs, otherwise known as puppycide, a disturbing American inner city phenomenon, by only performing a superficial, biased, and artificial review of the dogs killed by its Police Department which always results in the erroneous and contrived finding that the discharge of the weapon by the Officer, which results in the killing of the dog, is justified by the officer.

116.    In this instance, the Department superficially reviewed Officer Shihadah's assault of Miles and made a determination that Officer Shihadah acted appropriately.

117.    To establish a municipal liability claim, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129, 140 (2d Cir. 2010) (quoting Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007)). A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates. Iacovangelo v. Corr. Med. Care, Inc., 624 F. App'x 10, 13-14 (2d Cir. 2015) (formal policy officially endorsed by the municipality); Matusick v. Erie Cty. Water Auth., 757 F.3d 31, 62 (2d Cir. 2014) (widespread and persistent practice); Carter v. Inc. Vill. of Ocean Beach, 759 F.3d 159, 164 (2d Cir. 2014) (failure to train amounting to deliberate indifference); Jones v. Town of E. Haven, 691 F.3d 72, 81 (2d Cir. 2012) (policymaking official's "express" or "tacit" ratification of low-level employee's actions).). Relating to widespread and pervasive practices and using logical inferences to impute knowledge onto policymakers, circumstantial evidence can be sufficient to support an inference that . . . a municipal policy or custom exists." Santos v. New York City, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citing Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)).

118.    In this instance, the following constitutes the pattern or practice of the City of Niagara Falls Police Department and the City of Niagara Falls:

- That Defendant Officer Shihadah shot and severely injured Miles, the canine in question, as the dog approached said Defendant in a friendly and non-confrontational manner. The City of Niagara Falls Police Department has wrongfully shot numerous dogs through the years, through the deliberate indifference to the dogs' owner's Fourth Amendment rights to be free from unlawful seizures of such property. Such indifference to this particular right, and civil rights in general, is perpetuated by the City of Niagara Falls Police Department's policymaker, elected Chief of the City of Niagara Falls Police Department, Nicholas Ligammari.

- The City has ignored Freedom of Information Law requests to provide documentation of other instances in which its Officers have shot dogs.

- However, one representative sample of police shooting a dog due to the lack of proper training in terms of their interactions with canines took place on November 20, 2017 at a residence on North Avenue. In that instance, because of a Niagara Falls police officer's incompetence in terms of interacting with a canine due to the lack of proper training, he sprayed several bullets in a residential neighborhood, killing the dog while also shooting his partner and putting the entire neighborhood at risk.

- Another representative sample of the same phenomenom took place on September 18, 2023 on 65th Street. In that instance, a recently retired Niagara Falls police officer John Petrishin, unnecessarily shot and killed a beloved family dog owned by Kendall Conklin and her children, aka Nova. That dog was also non-threatening in nature when interacting with Petrishin and should he have had any training in terms of reading canine body language and deescalating encounters with dogs, he would not have immediately resorted to lethal force. However, due to the City's deliberate indifference to citizen's rights to be free from the unlawful shootings of their animals, Petrishin did not

have that training and Kendall Conklin's young children remain devastated to this day due to their dog being shot and killed.

- Such repeat Fourth Amendment violations amount to the City of Niagara Falls' deliberate indifference to an obvious need for training of its officers both in the laws pertaining to unlawful seizures, in the art of de-escalation, and in how to avoid conflict and especially lethal conflict when dealing with canines. This failure of the Department to adequately train, supervise, and regulate their Officers' dealings with canines resulted in Defendant Shihadah's actions in shooting Miles and thereby causing the Plaintiff insufferable and egregious harm, and will result in more unnecessary bloodshed if corrective measures aren't taken by the City of Niagara Falls and the City of Niagara Falls Police Department.

- The policymaker, namely Defendant Ligammari, would know 'to a moral certainty' that his employees will confront a given situation, namely encountering canines during the course of Police business. The situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation, as is shown above. Further, it is clear that the wrong choice by the City employee will frequently cause the deprivation of a citizen's constitutional rights. Cerbelli v. City of New York, 2008 U.S. Dist. LEXIS 109341, 99 CV 6846, (E.D.N.Y, 2008).

119.    Such inaction is the textbook definition of deliberate indifference. Plaintiff has pled as much, and can recover on such a theory under Monell.

120.    The above-referenced misuse of authority and power by said Defendants named in this cause of action was egregious and shocking to the conscience. As a result, the Plaintiff was caused and will continue to undergo and endure severe mental anguish, hardship, and distress as a result thereof.

121.    Such deprivations of Plaintiff's property rights and right to liberty and happiness were in violation of the rights secured to citizens by the Fourth Amendment of the United States Constitution and by Title 42 U.S.C. § 1983.

122.    As a result of the above-referenced Defendant's deprivation of Plaintiff's civil and Constitutional rights, Plaintiff has been damaged in an amount to be determined at trial.

123.    Plaintiff demands costs and attorney fees pursuant to 42 U.S.C. § 1988.

**Punitive Damages against Defendant Officer Baha A. Shihadah, Defendant Officer B. Claps, Defendant Officer Matthew Szczepaniec, and Defendant Chief Nicholas Ligammari, in their individual capacities**

124.    Plaintiff Mario Luna incorporates by reference all of the allegations set forth herein in this Complaint as if fully set forth herein.

125.    Defendant Officers Shihadah, Claps, Szczepaniec, and Defendant Chief Ligammari's individual capacities were deliberately indifferent to Plaintiff's Constitutional rights, and exhibited such indifference and malice by their above-referenced actions throughout this horrific ordeal as sustained by Plaintiff.

126.    Punitive damages are justified against the above-stated Defendants for their deliberate indifference and malice towards the Plaintiff herein.

127.    As a direct and proximate result of the acts of Defendants, Plaintiff suffered the following injuries and damages:

a.    Violation of his right pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable seizure of his person and seizure of his property;

b.    Violation of his right pursuant to the Fourth Amendment of the United States Constitution to be free from excessive force exercised during an arrest, as well to be free from being unlawfully arrested and maliciously prosecuted.

c. Violation of his rights pursuant to the First Amendment of the United States Constitution to be free from retaliatory conduct on account of exercising one's right to air their grievances about their government.

d. Emotional trauma and suffering, including fear, embarrassment, humiliation, harassment, emotional distress, frustration, extreme inconvenience and anxiety.

e. Compensatory damages in the form of lost wages and lost income, attorney fees, and other damages to be set forth over the course of this proceeding.

**WHEREFORE**, Plaintiff demands judgment on the above counts against the Defendants, their units, their officers, employees, against and other persons acting in concert or participation with them as stated above, and award the following amounts:

a. Compensatory damages in favor of the Plaintiff in an amount to be determined by a jury;

b. Exemplary damages in favor of the Plaintiff;

c. Costs of this action, including reasonable attorney fees to the Plaintiff Pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, U.S.C. 1988 (1976); and,

d. Punitive damages as stated above;

e. Such other relief as the court may deem appropriate.

DATED:    December 26, 2025
          Darien Center, New York

/s/ Matthew Albert, Esq.
The Law Offices of Matthew Albert Esq.
2166 Church Rd.
Darien Center, New York 14040
mattalbertlaw@gmail.com
Office: (716) 445-4119

Fax: (716) 608-1388